## Robert F. Summers, Appellee v. James W. Hedenberg, Appellant.

### Gen. No. 22,011.

1. VENDOR AND PURCHASER, § 65*—*when provision in contract for delivery of warranty deed modified.* A provision in a contract for the sale of real estate relative to a warranty deed being ready for delivery, *held* modified by another provision that it should be deposited with a title and trust company after the first two payments under the contract had been so deposited.

2. APPEAL AND ERROR, § 367*—*when defense not raised in answer unavailable on appeal.* Where in proceedings in equity to declare void a contract for the sale of real estate, defendant contended for the first time in the Appellate Court that complainant did not make proof of ownership, and did not, in his answer deny the averment of ownership in the bill of complaint, *held* the defendant could not avail himself of such matter of defense.

3. EQUITY, § 156*—*when defendant must set out nature of defense in answer.* The rule in chancery is that a defendant is bound to apprise the complainant by his answer of the nature of the defense he intends to set up, and the defendant cannot avail himself

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of any matter of defense which is not stated in his answer even though it should appear in the evidence.

4. EQUITY, § 431*—*when point not raised before master waived.* A point which is not raised before the master by objection or exception to his report is waived.

5. CONTRACTS, § 164*—*when parol evidence as to negotiations leading to land contract inadmissible.* Where a contract for the sale of lands is plain and unambiguous, evidence as to negotiations leading up to it, in equity proceedings to declare same forfeited, is inadmissible and such evidence is properly disregarded by the master.

6. VENDOR AND PURCHASER, § 151*—*when tender of deed excused by failure to comply with contract.* Defendant's repeated failures to comply with a contract whereby he had agreed to purchase real estate from complainant, *held* to amount to a refusal to so comply, which, under the terms of the contract, excused complainant from tendering a deed to defendant, it appearing that the terms of the contract obligated him to pay a specified sum within a certain period after a specified date, and such payment was repeatedly demanded for several months when complainant elected to declare the contract forfeited.

7. VENDOR AND PURCHASER, § 67*—*when provision in contract reciting payment as earnest money construed as referring to payment on purchase price.* Provision in contract for sale of real estate that "said purchaser has paid $1,000 as earnest money to be applied on such purchase when consummated," construed to mean that the purchaser parted with the earnest money for the benefit of the seller and that he paid it as a part of the purchase money.

8. VENDOR AND PURCHASER, § 67*—*when vendor entitled to earnest money as liquidated damages.* Provisions in contract for the sale of real estate with reference to earnest money paid by the purchaser, construed to mean that in case of defects in title which are not cured, at purchaser's option the contract becomes void and the earnest money shall be returned, but if the purchaser fails to perform, then, at the seller's option, the earnest money should be retained by the vendor as liquidated damages, and this regardless of whether the earnest money was delivered to the seller or by agreement was held by a third party.

9. EQUITY, § 9*—*when equity will determine whether party rightfully declared penalty forfeited.* A court of equity will not interfere with contracts providing for penalties and forfeitures, if the parties proceed strictly according to their terms, except in cases of fraud, mistake or unconscionable provisions but where the aid of such court is sought to declare whether a party rightfully declared

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

a penalty forfeited, it is very different from asking the court itself to declare such forfeiture.

10. EQUITY, § 512*—*when decree does not declare a forfeiture.* In chancery proceedings where complainant seeks to have a contract for the sale of real estate from him to defendant declared void and other equitable relief, and where under such contract defendant paid earnest money to a title and trust company to be applied on his purchase when completed, and he tries to obtain it from the stakeholder and such money is complainant's own according to the terms of the contract, and, inasmuch as no contractual relations exist, defendant cannot sue such holder in assumpsit, and the court incidentally must decide whether the forfeiture which complainant has declared was justified under all the circumstances of the case, there is no declaration of a forfeiture but simply a finding that the declaration of forfeiture is warranted under the circumstances.

11. VENDOR AND PURCHASER, § 151*—*when tender of deed unnecessary.* Where complainant sought in a court of equity to have a contract, whereby he agreed to sell real estate to defendant, declared void, a tender of deed to defendant *held* not necessary, as by means of defendant's default it would have been a useless act, and as by the terms of the contract it was provided that there should be no delivery to defendant but simply a deposit with a title and trust company.

12. VENDOR AND PURCHASER, § 116*—*what constitutes tender of performance of contract for sale of real estate by vendor.* Where the obligations in a contract for the sale of real estate became mutual and concurrent by the service of a notice on the part of the vendor whereby he offered to perform, *held* such offer of performance was a tender of performance.

13. VENDOR AND PURCHASER, § 116*—*what constitutes tender of performance of contract for sale of real estate.* A tender of performance in the case of mutual and concurrent promises in a contract for the sale of real estate does not mean the same kind of an offer as when used in reference to the payment of a debt due in money, but only means a readiness and willingness accompanied by ability on the part of the parties.

14. VENDOR AND PURCHASER, § 277*—*when vendor may declare contract for sale of land forfeited.* Under the terms of contract for sale of real estate and under the circumstances shown by the evidence, complainant vendor *held* to have the right to declare such contract forfeited.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1915. Affirmed. Opinion filed April 10, 1916.

BRADLEY, HARPER & EHEIM, for appellant; THOMAS E. D. BRADLEY and EDWARD J. FARRELL, of counsel.

DAWSON & DAWSON, for appellee.

MR. JUSTICE BAKER delivered the opinion of the court.

This appeal brings in review a decree for complainant Summers on a bill filed by him against defendant Hedenberg, praying that a certain contract between the parties for the sale of real estate by complainant to defendant, made October 2, 1913, be declared void; that the affidavit of claim made and filed by defendant be removed as a cloud on complainant's title; that defendant be enjoined from setting up any right under the contract; that a declaration of forfeiture of the contract made by complainant be decreed valid, and that a deposit of $1,000 earnest money made by defendant with the Chicago Title & Trust Company be forfeited and the depositary ordered to pay the same to complainant. The contract price was $29,500, to be paid, $1,000 as earnest money, $4,000 within thirty days after the title had been examined and found good or accepted by the purchaser, and $5,000 within sixty days after such examination and acceptance; and the remaining sum of $19,500 by giving three notes in the sum of $6,500 each, due in one, two, and three years after date, secured by trust deed upon the real estate. The contract further provides:

"This contract and the earnest money shall be held by the Chicago Title and Trust Co. in escrow, and when the payments of the respective sums of $4,000 and $5,000 shall have been deposited by purchaser with said Chicago Title and Trust Company in accordance with the terms of this contract, seller shall deposit

with said company a good and sufficient warranty deed conveying said property to purchaser and purchaser shall deposit the notes and trust deed aforesaid, securing said. balance of $19,500 purchase money. Said deeds shall be recorded, the examination of title continued by the Chicago Title and Trust Company, and upon its report that purchaser has good title to said real estate, subject to said encumbrance of $19,500, said sum of $10,000 held by it and said notes and trust deed shall be delivered by it to seller, and said warranty deed to purchaser.''

The contract also contains this provision:

''Provided a good and sufficient general warranty deed, conveying to said purchaser a good and merchantable title to said premises (subject as aforesaid) shall be ready for delivery.''

This provision is superseded by the provision for the deposits with the Chicago Title and Trust Company. The provision relating to the warranty deed being ready for. delivery was modified by prescribing that it shall be deposited with the Trust Company after the first two payments shall have been deposited.

Defendant failed to make the payment of $4,000 although such payment was demanded many times between December 1, 1913, and April 13, 1914, and repeated promises were made by defendant to pay the same within a few days. Complainant did not consent to any delay in the time of payment, and in March, 1914, notified defendant that unless he made the payments then due and carried out the other provisions of the contract by May 4, 1914, complainant would forfeit and cancel the contract and elect to retain the $1,000 earnest money as liquidated damages. Nothing further was done by defendant and May 5, 1914, complainant notified defendant that he elected to declare the contract forfeited and to receive the $1,000 deposited with the Trust Company as liquidated damages for defendant's failure to perform the contract in accordance with its terms.

May 29, 1914, defendant filed an affidavit claiming

that the time for the performance of the various provisions of the contract had by mutual agreement of the parties been extended from time to time; that complainant by notice sought to fix an arbitrary time for performance and to cancel the contract and retain the $1,000, and defendant claimed that the contract was in full force. Complainant filed his bill August 19, 1914, setting up the contract, the notices, and appellant's affidavit, and asking for relief as before stated.

Appellant relies on four grounds of reversal:

That appellee did not make proof of ownership.

That he did not tender a deed nor prescribe the form of the trust deed to be given.

That the time fixed in the notice preliminary to forfeiture was not reasonable.

That equity will not lend its aid to enforce a forfeiture.

The answer of defendant does not deny the allegation of ownership made in the first paragraph of the bill of complaint, and it is only in this court that, for the first time, it is contended that appellee did not make formal proof of ownership.

The rule in chancery is that a defendant is bound to apprise the complainant by his answer of the nature of the defense he intends to set up, and that the defendant cannot avail himself of any matter of defense which is not stated in his answer even though it should appear in the evidence.

A point which is not raised before the master by objection or exception to his report is considered as waived.

The contract is plain and unambiguous, and evidence as to negotiations leading up to it were inadmissible and such evidence was properly disregarded by the master.

Defendant's repeated failures to comply with the contract between December 1913 and March 1914 amounted to a refusal to so comply, and this under the

terms of the contract excused the complainant from tendering a deed to defendant. The contract shows that the purchaser parted with the earnest money for the benefit of the seller; that is, he paid it as a part of the purchase money. "Said purchaser has paid $1,000 as earnest money, to be applied on such purchase when consummated." It makes no difference whether the earnest money was delivered to the seller or by agreement is held by a third party. In case of defects in title which are not cured, at purchaser's option the contract becomes void and said earnest money should be returned. If the purchaser fails to perform, then at seller's option the earnest money should be retained by the vendor as liquidated damages.

By the terms of the contract the earnest money was Summers' money from the moment it was paid over as part of the purchase money, and so remained unless there was a defect in the title which was neither cured nor excused.

In *Howe v. Smith,* 27 Law Reports, Ch. D. 89, there was a contract of sale in which Howe agreed to purchase from Smith certain premises, "for the price of £12500, £500 part thereof having been paid on the signing of this agreement as a deposit and in part payment of the purchase money." The purchaser delayed closing the deal from time to time, and the court decided that the delays caused by the purchaser deprived him of the right to enforce specific performance. The complainant's attorney then asked for the return of the deposit and that the statement of claim might be amended so that that question might be raised and disposed of. This was granted by the court, and the substance of the opinions are on the point as to whether the purchaser had a right to the return of the earnest money.

One of the Justices, Lord Cotton, said:

"What is the deposit? The deposit, as I under-

stand it, and using the words of Lord Justice James, is a guarantee that the contract shall be performed. If the sale goes on, of course, not only in accordance with the words of the contract, but in accordance with the intention of the parties in making the contract, it goes in part payment of the purchase money for which it is deposited; but if on the default of the purchaser the contract goes off, that is to say, if he repudiates the contract, then, according to Lord Justice James, he can have no right to recover the deposit."

Lord Justice Bowen said:

"A deposit, if nothing more is said about it, is, according to the ordinary interpretation of business men, a security for the completion of the purchase. But in what sense is it a security for the completion of the purchase? It is quite certain that the purchaser cannot insist on abandoning his contract and yet recover the deposit, because that would be to enable him to take advantage of his own wrong."

Lord Justice Fry said:

"It appears to me that when the purchaser had failed on his part down to the last moment which law or equity gave him, the vendor's title was absolute, both to the whole legal and equitable estate in the land sold, and also, by force of the terms of the deposit, to the deposited money, and that the purchaser could recover no right in this deposit because the vendor chose to sell his land, as he was entitled to do under his title as absolute legal and equitable owner."

In *Catton v. Bennett,* 51 L. T. (N S.) 70, the contract provided:

"As an earnest hereof the purchaser has this day paid into the hands of Mervin, Richard Smith & Co. the sum of £500 as a deposit, the deposit to form part of the purchase money to be paid on the day of possession."

In discussing the term "earnest money" Judge Kay says:

"Looking to the authorities that have been cited on this subject, I should be strongly inclined to think

that 'as earnest hereof' meant a sum which if I do not perform my part of the contract is a sum which the vendor is to keep.''

In *Bucklen v. Hasterlik*, 155 Ill. 423, the court quotes with approval a sentence from *Depree v. Bedborough*, 4 Giff. 479, to this effect:

''Then how the person who was in default can, upon that default and in consequence of that default, acquire any right to the money, which was parted with as a security that there should be no default, it is difficult to conceive.''

The courts have never attempted to say that parties cannot make contracts which provide for penalties and forfeitures, and if the parties so provide in their contracts and proceed strictly according to their terms, a court of equity will not interfere except in cases of fraud, mistake or unconscionable provisions. It makes a great difference whether in seeking relief in a court of equity the court is asked for some affirmative action which requires it to decree a forfeiture, or whether the aid of the court is sought for some relief in deciding whether to grant it or not. The court must pass on the question of whether the party seeking the aid of the court has rightfully sought to enforce the terms of a valid contract. In this case the defendant sought to obtain money from the stake holder—complainant's own money according to the terms of the contract. Defendant cannot sue the Chicago Title and Trust Company in assumpsit, as no contractual relations exist. The court incidentally must decide whether the forfeiture declared by complainant was justified under all the circumstances of the case. This is very different from asking the court itself to declare a forfeiture. In no part of the decree of the Circuit Court was there a declaration of forfeiture. It simply found that the declaration of forfeiture was warranted under the circumstances.

A tender was not necessary, first, because by reason of defendant's default it would have been a useless act;

second, because by the terms of the contract defendant provided that there was to be no delivery to him, but simply a deposit with the Chicago Title and Trust Company. But even on counsel's own theory that by the service of the notice the obligations of the contract became mutual and concurrent, there was a tender. The offer to perform made by appellee was a tender. The case of *Clark v. Weis,* 87 Ill. 438, points out that tender in the case of mutual and concurrent promises does not mean the same kind of an offer as when used in reference to the payment of a debt due in money, but only means a readiness and willingness accompanied with ability on the part of the parties. The court on page 440 says:

"The promises of the parties here were mutual and dependent, and, as a clear exposition of the law applicable, we quote from the opinion of Storrs, C. J., in *Smith v. Lewis,* 26 Conn. 110: 'As the agreement required only that the acts of both the parties should be done at the same time, neither was obliged to do the first act, or consequently to perform his part of the agreement without or before the other. The plaintiff, in order to sustain this action, need only to show that he did what the law required of him; and all that it required was, that he should be ready and willing to perform on his part, if the defendant was ready to perform on his. Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word "tender" as used in such a connection does not mean the same kind of offer as when it is used in reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it, and nothing further remains to be done, and the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which

he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability and notice are sufficient evidence of, and indeed imply, an offer or tender in the sense in which those terms are used in reference to the kind of agreements we are now considering. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is, in its nature, conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement.' ''

We think that under the terms of the contract and under the circumstances shown by the evidence, complainant had a right to declare the contract forfeited. If he had, all the relief prayed for follows as a matter of course, to wit, that the Chicago Title and Trust Company should pay over the $1,000 deposit, and that the affidavit filed by Hedenberg be removed as a cloud.

Under the evidence in the case the decree was proper and is affirmed.

*Affirmed.*