## ELECTRO ASSOCIATES, INC., Appellant

v.

## HARROP CONSTRUCTION CO., INC., G.B. Harrop and Aetna Casualty and Surety Company, Appellees.

No. 01–94–00319–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 24, 1995.

Rehearing Overruled Sept. 14, 1995.

Charley L. Smith, Bellville, for appellant.

Terry L. Salazar, Stephen K. Yungblut, and Michelle I. Rieger, Dallas, for appellees.

Before HEDGES, HUTSON–DUNN and ANDELL, JJ.

## OPINION ON REHEARING

HEDGES, Justice.

On rehearing, we overrule appellant's motion for rehearing, withdraw our opinion of June 29, 1995, and issue this opinion in its stead.

Electro Associates, Inc. sued Harrop Construction Co., Inc., G.B. Harrop, and Aetna Casualty and Surety Company (collectively, Harrop) alleging breach of contract, breach of an implied duty of good faith and fair dealing, fraud, misapplication of construction

trust funds, conversion, and quantum meruit. The jury returned a verdict favorable to Electro, and the trial court entered judgment awarding Electro $220,224.10 in damages. Both parties claim that the judgment is erroneous. We affirm the judgment as reformed.

## I. Background

On January 2, 1991, Harrop entered into a contract with Harris County, Texas, for construction of a 348–bed regimented Intensive Probation Program, commonly referred to as a "boot camp." This contract provided that by court mandate, occupancy was to occur no later than April 20, 1991. Harrop posted payment and performance bonds, as required by law, with Harrop as principal and Aetna as surety.

Before signing the contract with the County, Harrop received bids from subcontractors for the electrical portion of the work. Electro was the low bidder at $490,000. Electro began work on the project under an oral agreement, which was reduced to writing on January 25, 1991.

Work on the project was delayed by a number of factors such as rain, revisions to the architect's plans, shipment delays, and unforeseen discrepancies between the plans and the site conditions. Electro claimed that much of the delay was caused by Harrop's inaccurate or incompetent scheduling of the work to be performed by the various subcontractors.

When it became apparent that the construction would not be completed by the court-mandated deadline, Harrop reached an agreement with the County that liquidated damages would not be assessed if the barracks and administration building were completed by April 30, 1991. The subcontractors worked overtime, and the barracks and administration building were completed by that date. The County then gave Harrop additional time in which to complete the remainder of work in the project. This extension was passed on to Electro.

At the conclusion of the construction project, Harrop backcharged Electro for work that Harrop claimed it had performed on Electro's behalf. The two parties could not agree on these backcharges. Harrop placed the funds that it had received from the County on Electro's behalf into a segregated account until the dispute over the backcharges could be resolved. The present suit followed.

## II. Duty of good faith and fair dealing

### (Electro's Point of Error One)

In its first of error, Electro contends that the trial court erred by refusing to submit a jury question on the issue of good faith and fair dealing. Electro urges us to extend the duty of good faith and fair dealing to apply to the contractor-subcontractor relationship.

The Texas Supreme Court has recognized a common-law duty of good faith and fair dealing only where a "special relationship" exists between the parties to a contract. *See Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex.1987); *see also Aranda v. Insurance Co. of N. Am.,* 748 S.W.2d 210, 212 (Tex.1988). Absent a "special relationship," the duty to act in good faith is contractual in nature, and its breach does not amount to an independent tort. *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 595 n. 5 (Tex.1992); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 481 (Tex.App.—Corpus Christi 1989, writ denied). The supreme court has been reluctant to extend the duty of good faith and fair dealing to contexts other than the special relationship between an insurance company and its insured. *Wheeler v. Yettie Kersting Mem. Hosp.,* 866 S.W.2d 32, 52 (Tex.App.—Houston [1st Dist.] 1993, no writ).

Texas courts have held that the "special relationship" necessary to create a common-law duty to act in good faith does not apply in the following contexts (1) employer-employee, *Winograd v. Willis,* 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied); (2) employment-at-will, *Winters v. Houston Chronicle Pub. Co.,* 795 S.W.2d 723, 724 n. 2; (3) creditor-guarantor (Tex.1990); *FDIC v. Coleman,* 795 S.W.2d 706, 709 (Tex.1990); (4) lendor-borrower, *Herndon v. First Nat'l Bank,* 802 S.W.2d 396, 399 (Tex.App.—Amarillo 1991, writ denied); (5) supplier-distributor, *Adolph Coors,*

780 S.W.2d at 481; (6) insurance company-third party claimant, *see Transport Ins. Co. v. Faircloth,* 38 Tex.Sup.Ct.J. 424, 431, 898 S.W.2d 269 (May 31, 1995); or (7) franchisee-franchisor, *Crim Truck and Tractor,* 823 S.W.2d at 596.

Conceding that no Texas case has imposed a duty of good faith and fair dealing in a contractor-subcontractor relationship, Electro urges this Court to extend the duty to apply in such situations. Electro argues that in the contractor-subcontractor context, the subcontractor is put in an inferior bargaining position because the very nature of the contract prohibits it from negotiating or communicating directly with a project owner; therefore the subcontractor must rely on the contractor to represent its interests to the project owner.

 We do not believe that a subcontractor's dependence upon its contractor creates the type of "special relationship" necessary to extend the duty of good faith and fair dealing. We conclude that the relationship between Electro and Harrop was an ordinary commercial contractual relationship. A business entity's trust of another and its reliance on the other's contractual promise to perform the contract do not, of themselves, engender a special relationship. *Central Sav. & Loan Ass'n v. Stemmons Northwest Bank, N.A.,* 848 S.W.2d 232, 240 (Tex.App.—Dallas 1992, no writ).

We overrule point of error one.

The discussion of the remaining points of error does not meet the criteria for publication, Tex.R.App.P. 90, and is thus ordered not published. The judgment is affirmed.